UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ELCAN INDUSTRIES, INC.,

                Plaintiff,

    -against-

CUCCOLINI, S.R.L., PETERS EQUIPMENT,
COMPANY, LLC, and ROBERT RAMSEY

                Defendants.
------------------------------------X

13CV4058(GBD)(DF)

**MEMORANDUM DECISION
AND ORDER**

GEORGE B. DANIELS, District Judge:

    Plaintiff Elcan Industries, Inc. brings this action seeking damages and injunctive relief based on alleged (a) breaches by Defendant Cuccolini of a distribution agreement with Elcan; (b) breaches by Cuccolini of the implied covenant of good faith and fair dealing; (c) tortious interference by Peters and Ramsey with Elcan's contractual relationship with Cuccolini; and (d) tortious interference with Elcan's other business relationships and opportunities by Peters and Ramsey, in collusion with Cuccolini; and (e) defamation of Elcan and its business by Cuccolini, Peters, and Ramsey.

    Defendants Peters Equipment Company, LLC and Robert Ramsey (the "Peters Defendants") move to dismiss the Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). Defendant Cuccolini brings a motion to dismiss Plaintiff's action in its entirety for *forum non conveniens* or, in the alternative, to dismiss Plaintiff's non-contractual causes of action for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff opposes the motions, and argues that the exercise of personal jurisdiction over the Peters Defendants is proper under New York law, that New York is an appropriate forum to adjudicate this dispute, and that Plaintiff has stated a claim for each cause of action against the Defendants.

The Peters Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. Cuccolini's motion to dismiss for *forum non conveniens* is DENIED. Cuccolini's motion to dismiss Plaintiff's breach of covenant of good faith and fair dealing, tortious interference, and defamation claims for failure to state a claim is GRANTED.

## BACKGROUND

Plaintiff Elcan is a New York corporation that sells mechanical screening equipment. (Compl. ¶¶ 2, 12). Defendant Cuccolini is an Italian limited liability company with its principal place of business in Reggio Emilia, Italy. (Compl. ¶ 3). Elcan sells mechanical screening equipment, including those produced by Defendant Cuccolini, from its headquarters and sole business facilities in New York. (Compl. ¶ 14). Peters Equipment Company is a design and engineering firm that provides services exclusively to the coal and coke processing industries. (Declaration of Robert Ramsey in Support of Motion to Dismiss (hereinafter "Ramsey Decl.") at ¶ 2). Robert Ramsey is a citizen of Bluefield, Virginia, and a member of Peters Equipment Company, LLC, a Virginia-based company. (*Id.* at ¶¶ 1-2). On or about June 14, 2010, Elcan and Cuccolini entered into a Distribution Agreement (the "Agreement") concerning the sale and distribution of certain Cuccolini products. (Compl. ¶¶ 17, 18). The Agreement made Elcan the exclusive distributor of those products in the United States and a non-exclusive distributor in Canada for a period of 5 years. (Compl. ¶ 19).

On June 13, 2013, Plaintiff filed its Complaint against Defendants Cuccolini, Peters and Ramsey. Plaintiff alleges that the Peters Defendants tortiously interfered with Elcan's distribution agreement with Cuccolini "by unfair, dishonest or improper means and by agreeing to replace [Plaintiff] as the distributor of [Cuccolini mechanical screens] in the United States and in Canada." (Compl. ¶ 92). Specifically, Plaintiff alleges that "[u]pon information and belief, [the Peters Defendants] offered Cuccolini inducements in order to cause Cuccolini to terminate its agreement with [Plaintiff]

2

immediately (and without cause) and to replace [Plaintiff] with [the Peters Defendants]," and that "[u]pon information and belief, in order to cause Cuccolini to terminate its Agreement with [Plaintiff] immediately (and without cause), and to replace [Plaintiff] with [the Peters Defendants], [the Peters Defendants] baselessly disparaged and defamed [Plaintiff] in communications with Cuccolini." (Compl. ¶¶ 42-43).

Second, Plaintiff alleges that the Peters Defendants—in concert with Cuccolini—tortiously interfered with Plaintiff's other business opportunities "by unfair, improper, or dishonest means, including false and misleading statements about [Plaintiff] and its business, in order to obtain those customers for themselves." (Compl. ¶ 100). Specifically, Plaintiff alleges that "[u]pon information and belief, Cuccolini has colluded with [the Peters Defendants] to interfere with [Plaintiff's] business opportunities—i.e., pending sales by [Plaintiff] of Products—by defaming [Plaintiff], by falsely disparaging and attacking [Plaintiff's] reputation in the market in communications to [Plaintiff's] customers, and by refusing to deliver Products to [Plaintiff] in accordance with orders placed by [Plaintiff]," and that "upon information and belief, [the Peters Defendants], in collusion with Cuccolini, have been and are soliciting [Plaintiff's] customers for Products, and are seeking to usurp [Plaintiff's] pending sales, notwithstanding the Agreement, by defamation of [Plaintiff's] business reputation." (Compl. ¶¶ 46, 53).

Third, Plaintiff alleges that the Peters Defendants, in concert with Cuccolini, "made false statements to [Plaintiff's] customers and prospective customers about the quality and nature of [Plaintiff's] business and capabilities, and concerning [Plaintiff's] ability and willingness to perform its obligations under the Agreement." (Compl. ¶ 105). Plaintiff alleges that "upon information and belief, Cuccolini [and/or the Peters Defendants] have made false and/or misleading disparaging statements to [Plaintiff's] customers about the quality of [Plaintiff's] business capabilities, about [Plaintiff's] ability

3

and/or willingness to perform its obligations under the Agreement, and/or about its business competence." (Compl. ¶ 54). Plaintiff further alleges that "since June 5, 2013, several of [Plaintiff's] customers have terminated negotiations with [Plaintiff] or manifestly cooled their relationships with [Plaintiff] . . . [and] sudden changes of this kind are rare in [Plaintiff's] business." (Compl. ¶¶ 55-56).

## I.     LACK OF PERSONAL JURISDICTION OVER THE PETERS DEFENDANTS

To avoid dismissal under Rule 12(b)(2), a plaintiff has the burden of establishing personal jurisdiction over the defendant. *Thomas v. Ashcroft*, 470 F.3d 491 (2d Cir. 2006). Where no evidentiary hearing has been held, nor have the parties engaged in jurisdictional discovery, plaintiff need only make a *prima facie* showing on the basis of legally sufficient allegations of jurisdiction. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). "The plaintiff cannot rely merely on conclusory statements or allegations; rather, the *prima facie* showing must be 'factually supported.'" *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 501 (S.D.N.Y. 2004) (citations omitted).

A court considering a motion to dismiss for lack of personal jurisdiction may consider "all pertinent documentation submitted by the parties" because such a motion is "inherently a matter requiring the resolution of factual issues outside of the pleadings." *Mantello v. Hall*, 947 F. Supp. 92, 95 (S.D.N.Y. 1996) (internal quotation marks omitted); *accord Dauman v. Hallmark Card, Inc.*, No. 96 Civ. 3608, 1998 WL 54633, at *4 (S.D.N.Y. Feb. 9, 1998) (appropriate for court to weigh affidavits on personal jurisdiction issue); *John Hancock Property and Casualty Ins. Co. v. Universale Reinsurance Co., Ltd.*, No. 91 Civ. 3644, 1992 WL 26765, at *6 (S.D.N.Y. Feb. 5, 1992); *Canadian Group Underwriters Ins. Co. v. M/V Arctic Trader*, No. 96 Civ. 9242, 1998 WL 730334, at *2 (S.D.N.Y. Oct. 19, 1998). All averments by plaintiff of jurisdictional facts must be accepted as true and pleadings and affidavits are to be construed in plaintiff's favor. *In re Magnetic Audiotape*, 334 F.3d at 206.

4

A federal court sitting in diversity may exercise personal jurisdiction to the same extent as courts of general jurisdiction in the state in which it sits. Fed. R. Civ. P. 4(k)(1)(A); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez*, 305 F.3d 120, 124 (2d Cir. 2002). To exercise jurisdiction pursuant to Fed. R. Civ. P. 4(k)(1)(a), (1) there must be a statutory basis for the exercise of jurisdiction under the applicable state law, here New York law, and (2) it must comport with the Due Process Clause of the Fourteenth Amendment. *Id.*

In New York, a plaintiff must demonstrate either that the defendant was "present" and "doing business" in New York within the meaning of New York Civil Procedure Law and Rules ("CPLR") § 301, or that the defendant committed acts within the scope of New York's long-arm statute, CPLR § 302, including: (i) transacting business in New York; (ii) committing a tortious act while physically present in New York; or (iii) committing a tortious act outside of New York that results in consequences in New York. *Schulz v. Safra Nat'l. Bank of New York*, 377 Fed. Appx. 101, 102 (2d Cir. 2010). Here, Plaintiff's allegations fail to establish either general jurisdiction under CPLR § 301 or specific jurisdiction under CPLR § 302. Because there is no jurisdiction under New York law, this Court need not reach the due process inquiry.

### A. There is No General Jurisdiction under C.P.L.R. § 301

In order to establish general jurisdiction under CPLR § 301, a plaintiff must show that the "defendant is engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." *Zibiz Corp.*, 777 F. Supp. 2d at 416. Factors to be considered under § 301 include: "(1) whether the defendant maintains an office in New York; (2) whether the defendant has any bank accounts or other property within the state; (3) whether the defendant has a telephone listing in the state; (4) whether the defendant does public relations work or

solicits business within the state; and (5) whether the defendant has employees or agents located within the state." *Id.* at 416–17.

Plaintiff has failed to establish that the Peters Defendants are engaged in a continuous and systematic course of doing business in New York. Specifically, (1) the Peters Defendants are located in Virginia; (2) Peters Equipment Company is incorporated in West Virginia; (3) Peters Equipment has no subsidiaries or affiliates in New York; (4) none of Peters Equipment's officers or directors reside in New York; (5) Peters Equipment has no employees in New York; (6) the Peters Defendants have never contracted with any persons or entities in New York; (7) the Peters Defendants have no offices in New York; (8) the Peters Defendants have no addresses, telephone numbers, bank accounts, or any other tangible or real property in New York; and (9) the Peters Defendants have never traveled to New York for the purpose of soliciting business. *See* Ramsey Decl., ¶¶ 1-2, 8-14; 21-22. Thus, this Court lacks general jurisdiction over the Peters Defendants.

## B. The Peters Defendants are Not Subject to Specific Personal Jurisdiction Pursuant to C.P.L.R. § 302 (a)(1)

Section 302 (a)(1) of the New York long-arm statute provides that a court may exercise personal jurisdiction over any foreign defendant who "transacts any business within the state" if the cause of action arises from that transaction of business. C.P.L.R. § 302 (a)(1); *Agency Rent A Car Sys. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996). The Court looks at many factors, no one dispositive, to determine whether an out-of-state defendant is "transacting business" in New York including if: (1) there is a continuous "contractual relationship with a New York corporation," (2) the contract was created, negotiated, or signed in New York, (3) the defendant visited New York to discuss the contract or negotiate with a New York corporation, (4) there is a choice-of-law clause in the contract, and (5) the

contract stipulates that the defendant send money to New York or be supervised by a corporation from New York. *Id.* at 29 (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58-59 (2d Cir. 1985)) (citations omitted). Furthermore, for a non-domiciliary to transact business, it must purposefully avail itself of the benefits and protections of New York's laws in conducting its activities in the state. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010). Physical presence in New York, standing alone, is insufficient to establish purposeful availment. *See, e.g., V Cars, LLC v. Isr. Corp.*, 902 F. Supp. 2d 349, 360-64 (S.D.N.Y. 2012) (finding no jurisdiction where defendants had engaged in "exploratory meetings" in New York); *Commc'n Partners Worldwide, Inc. v. Main St. Res.*, 2005 U.S. Dist. LEXIS 14911, at *12-17 (S.D.N.Y. July 25, 2005) (no jurisdiction over defendants who corresponded with parties in New York, or who attended one "isolated meeting" in the state).

The Peters Defendants' actions as alleged do not amount to the transaction of business within New York State. First, Plaintiff does not allege that the Peters Defendants were physically present in the state. Rather, the only parties that Plaintiff alleges set foot in New York were Plaintiff and Defendant Cuccolini. Accordingly, the Peters Defendants cannot be said to have transacted business in the state. Furthermore, with respect to any allegedly defamatory statements made by the Peters Defendants, "New York courts do not interpret 'transact[ing] business' to include mere defamatory utterances sent into the state." *Best Van Lines, Inc.*, 490 F.3d at 248. Rather, "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation." *Id.* In defamation cases, "the 'single act' of uttering a defamation, no matter how loudly, is not a 'transaction of business' that may provide the foundation for personal jurisdiction." *Id.* Thus, no in-state activity by the Peters Defendants gave rise to the causes of action alleged here.

### C. The Peters Defendants are not Subject to Specific Personal Jurisdiction Pursuant to C.P.L.R. § 302 (a)(2)

Jurisdiction under CPLR § 302(a)(2) exists where the plaintiff alleges that "defendant or his agents committed a tortious act while physically present in New York." *NewMarkets Partners LLC v. Sal. Oppenheim Jr. CIE*, 638 F. Supp. 2d 394, 403 (S.D.N.Y. 2009) (*citing Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) (internal quotations omitted). However, "[e]ven if [plaintiff] suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of § 302(a)(2)." *Bensusan Restaurant Corp.*, 126 F.3d at 29.

Here, Plaintiff's only reference to a tortious act in New York is that the Peters Defendants "engaged in tortious conduct in New York . . . that caused injury to [Plaintiff] in New York." Compl. ¶¶ 9-10. Because "[c]onclusory allegations do not substitute for evidentiary facts," Plaintiff has failed to establish jurisdiction under § 302(a)(2). *Faherty v. Spice Entm't, Inc.*, 2005 U.S. Dist. LEXIS 17976, at *20 (S.D.N.Y. Aug. 18, 2005).

### D. The Peters Defendants are not Subject to Specific Personal Jurisdiction Pursuant to C.P.L.R. § 302 (a)(3)

Jurisdiction pursuant to § 302 (a)(3)(ii) is predicated on five elements: "(1) [t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce." *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 241 (S.D.N.Y 2010) (citing *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (3d Cir. 2006)) (citations omitted).

Under New York law, "residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and

8

a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there." *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980); *see also Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 94 (2d Cir. 1975). In order to allege injury in the form of lost sales or lost customers for purposes of § 302(a)(3) those lost sales or lost customers must be within the New York market. *See, e.g., Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 336-37 (S.D.N.Y. 2008); *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 568 (S.D.N.Y. 2000).

Plaintiff argues that its claims for tortious interference with contract and with prospective business relations sound in tort and thus confer long-arm jurisdiction. Plaintiff alleges the Peters Defendants:

> ". . . engaged in tortious conduct in New York and elsewhere that caused injury to [Plaintiff] in New York, and [the Peters Defendants] expected or reasonably should have expected that [their] tortious conduct would have adverse effects on [Plaintiff] in New York, and [they] derive substantial revenue from interstate or international commerce."

*See* Compl. ¶¶ 9-10. Specifically, Plaintiff alleges that "Peters and/or Ramsey intentionally interfered with [Elcan and Cuccolini's] contractual relationship by procuring Cuccolini's breach of the Agreement by unfair, dishonest or improper means and by agreeing to replace Elcan as the distributor of Products in the United States and Canada." Compl. ¶ 92. Plaintiff further alleges that the Peters Defendants interfered with Plaintiff's business relations and opportunities "by unfair, improper, or dishonest means, including false and misleading statements about Elcan and its business, in order to obtain those customers for themselves." Compl. ¶ 100. Plaintiff argues that its claims "arise from a wide range of misconduct" including the Peters Defendants' (1) "misrepresentat[ion of] their intentions to cause Cuccolini to breach the Agreement without cause and to loot Elcan's customers"; (2) concealment of their activities in setting up a joint venture with Cuccolini; (3) misappropriation of Elcan's confidential

9

customer information; (4) concealment and misrepresentation of their identities "in claiming to be representatives of another company so as to learn about Elcan's confidential and proprietary business and technical methods and strategies in Elcan's own facilities in New York"; and (5) participation with Cuccolini "in threatening and intimidating Grotto [Elcan's President] in order to bully Elcan into giving up its exclusivity and other rights under the Agreement with Cuccolini in favor of Ramsey or Peters." Plaintiff's Memorandum of Law in Opposition to Motion by Defendants Peters Equipment and Ramsey to Dismiss Complaint Against Them ("Opp. Br.") at 14.

Plaintiff also argues that it suffered injury in New York because it lost business or customers within the state as a result of the Peters Defendants' conduct. *Id.* at 15. Specifically, Plaintiff alleges that "Peters and/or Ramsey caused injury to the business relationship between Elcan and Cuccolini, to Elcan's detriment." Compl. ¶ 94. Plaintiff also alleges that it suffered injury when "Peters and/or Ramsey, in collusion with Cuccolini, injured the relationships between Elcan and those customers by causing those customers to withdraw their business from Elcan." Compl. ¶ 101.

Because Plaintiff does not identify any lost customers in New York as a result of tortious conduct by the Peters Defendants, Plaintiff has not alleged that it suffered any cognizable injury in New York giving rise to jurisdiction over the Peters Defendants under CPLR § 302(a)(3). Plaintiff has alleged no facts that would support a conclusion of foreseeable injury suffered in New York. Because the complaint does not demonstrate personal jurisdiction over the Peters Defendants, this Court will not further address Plaintiff's failure to factually allege a sufficient cause of action against them.

## FORUM NON CONVENIENS

*Forum non conveniens* is a discretionary device permitting a court in rare instances to "dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir.1998); *see also Gulf Oil Corp. v. Gilbert*, 330

U.S. 501, 507 (1947). In assessing whether *forum non conveniens* dismissal is appropriate, courts engage in a two-step process: (i) courts first determine if an adequate alternative forum exists. *See, e.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Gilbert,* 330 U.S. at 506-07; (ii) if so, courts balance a series of factors involving the private interests of the parties in maintaining the litigation in the competing fora and any public interests at stake. *See, e.g., id.* at 508–09. The defendant bears the burden to establish that an adequate alternative forum exists and then to show that the pertinent factors "tilt[ ] strongly in favor of trial in the foreign forum." *R. Maganlal & Co.,* 942 F.2d at 167. "[T]he plaintiff's choice of forum should rarely be disturbed." *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839.

Although England is an adequate alternative forum agreed to by the contracting parties,[1] a balancing of the relevant factors tilts in favor of Plaintiff's chosen New York forum. First, because New York is Elcan's home forum, Elcan's selection of this court in New York must be given "the greatest deference." In addition, the dispute with respect to Elcan has strong connections to New York and the United States. The contract was executed upon Grotto's signature in New York. The subject matter of the contract is an exclusive distributorship in the United States. The contract contemplated Elcan's performance in the United States, and the purported termination of that contract was, according to Cuccolini, based on that performance in the United States. Most, if not all, non-party witnesses are in the United States, including the current and/or prospective customers of Elcan, and other Elcan customers who can testify to the quality issues concerning Cuccolini's products. Elcan's efforts to bring the Cuccolini products to saleable condition took place in the United States. Finally, Elcan alleges that it has suffered injury to its business with customers in New York.

---

[1] The availability of an adequate alternative forum "[o]rdinarily . . . will be satisfied when the defendant is amenable to process in the other jurisdiction" and the alternative forum "permit[s] litigation of the subject matter in dispute." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n.22 (1981); *see also Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 75 (2d Cir. 2003), *cert. denied,* 540 U.S. 1149 (2004).

11

Contrary to Cuccolini's assertion, the distribution agreement did not contain a mandatory forum selection clause. Section 28.2 provides that "the courts of England and Wales shall have the necessary jurisdiction to settle any dispute or claim that arises out of or in connection with this Agreement or subject matter." Meanwhile, Section 28.3 expressly provides that "[t]he parties shall nonetheless retain the right within their discretion to institute proceedings in any court having jurisdiction." Distribution Agreement (Complaint Exh. "A") § 28.3. Thus, the Agreement provided that an English court would have jurisdiction, but is not the selected exclusive forum, for dispute resolution. Rather, the selection of a forum was expressly left to the parties' discretions.

Furthermore, the London suit that Cuccolini filed before Elcan sued in New York does not weigh in favor of dismissal. The Second Circuit has mandated that "the mere existence of parallel foreign proceedings does not negate the district courts' virtually unflagging obligation to exercise the jurisdiction given them." *Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (internal quotations omitted). "The task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification for the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction." *Id.* at 93. Importantly, "circumstances that routinely exist in connection with parallel litigation cannot reasonably be considered exceptional circumstances, and therefore the mere existence of an adequate parallel action, by itself, does not justify the dismissal of a case on grounds of international comity abstention." *Id.* at 95. Cuccolini has not identified any "exceptional circumstances" here.

Finally, any inconvenience to Cuccolini in litigating in this Court does not outweigh Elcan's forum choice. Cuccolini and its parent company have had a strong business presence in the United States, including in New York, for years, including sales to Elcan of its Cuccolini Products, their

12

admitted Recovery 21 venture with Peters Equipment in the coal-producing regions of the United States, and their Domino's pizza franchises in the Northwest United States. (Vandenberg Decl. ¶¶ 4-6; Grotto Decl. 2 ¶¶ 14, 18.). Moreover, although England was designated as the parties' neutral available forum, it has no connection with either party, their contract or the pending dispute. Defendant Cuccolini's motion to dismiss on the grounds of *forum non conveniens* is denied.

## FAILURE TO STATE A CLAIM AGAINST CUCCOLINI

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 152 (2d Cir. 2002). "The complaint may be dismissed only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995); *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

### A. Plaintiff Failed to Allege Breach of Covenant of Good Faith and Fair Dealing

In support of its third claim, Elcan alleges that "Cuccolini purported in bad faith to terminate the Agreement without any valid basis, and thereafter has failed and refused to sell, deliver or otherwise provide Products to Elcan for sale in the United States and Canada, and has filed and refused to cooperate with Elcan with respect to marketing and sales of Products in the United States and Canada."

Compl. ¶ 85. Elcan also alleges that Cuccolini knowingly supplied Elcan with defective products. Compl. ¶ 87.

The Complaint fails to state a cause of action for a breach of the covenant of good faith and fair dealing because it simply realleges violations of express contractual provisions. *See Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) (explaining that "[c]laims of breach of the implied covenant . . . must be premised on a different set of facts from those underlying a claim for breach of contract") (internal citations and quotations omitted). Specifically, Elcan's allegations related to its claim for a breach of the covenant of good faith and fair dealing simply repeat its allegations in paragraphs 64-66 for breach of contract. Furthermore, Elcan's allegation in paragraph 87 regarding defects in products supplied by Cuccolini is merely an allegation for a breach of Section 13.2 of the distribution agreement, which warrants that the products "will be free of material defects." Elcan's breach of the covenant of good faith and fair dealing claim is therefore dismissed as redundant to its breach of contract claim. Count Three alleging a breach of the covenant of good faith and fair dealing is dismissed.

### B. Plaintiff Failed to Allege Tortious Interference with Other Business Opportunities

In order to state this claim under New York Law, a Plaintiff must allege that (1) it had business relations with a third party; (2) Cuccolini interfered with those business relations; (3) Cuccolini acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) Cuccolini's acts injured those relations. *See Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008); *see also Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108-109 (2d Cir. 1997); *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189-90, 818 N.E.2d 1100, 1103, 785 N.Y.S.2d 359, 362 (2004). Here, Plaintiff's allegations fall far short of this standard. "In the case of tortious interference with business relations . . . the 'plaintiff must show more culpable conduct on the part of the defendant,'" than

14

is required to show tortious interference with contract. *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 Fed. Appx. 102, 105-106 (2d Cir. N.Y. 2012) (*quoting Noonan*, 3 N.Y.3d at 189-90, 818 N.E.2d at 1103, 785 N.Y.S.2d at 362)). Rather, "the defendant's conduct must amount to a crime or an independent tort." *Id.*

The Complaint fails to state a cause of action for tortious interference with prospective business relations because it does not allege that any of Cuccolini's conduct was criminal or otherwise wrongful. Furthermore, because the Complaint does not allege what Cuccolini said to Plaintiff's customers and what the effect of those statements were, this Court cannot determine whether the alleged conduct amounts to an "independent tort" sufficient to give rise to a claim for tortious interference with prospective business relations. *See generally Valley Lane Indus. Co.*, 455 Fed. Appx. at 106; *see also Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 451 (S.D.N.Y. 2012) (holding that complaint must allege defendant directly interfered with and convinced third party not to do business with plaintiff). Counts Four and Five alleging tortious interference with contractual relations and other business opportunities are dismissed.

### C. Plaintiff Failed to Allege Defamation

To survive a motion to dismiss a defamation claim, a plaintiff must, "identif[y] the purported communication, and [indicate] who made the communication, when it was made, and to whom it was communicated." *Fleming v. Hymes-Esposito*, 2013 U.S. Dist. LEXIS 45912, at *20-21 (S.D.N.Y. Mar. 29, 2013) (*quoting Prowley v. Hemar Ins. Corp. of Am.*, U.S. Dist. LEXIS 45249, at *6 (S.D.N.Y. May 7, 2010) (internal quotations omitted); *accord Thai v. Cayre Group, Ltd.*, 726 F. Supp. 2d 323, 329-30 (S.D.N.Y. 2010). Here, the complaint fails to identify who made the allegedly defamatory statements, what those statements were, when they were made, or where. Rather, Plaintiff alleges only that the termination letter Cuccolini sent to Plaintiff contained "false and misleading statements about

[Plaintiff's] performance, capabilities, and business manner, including the assertion that [Plaintiff] is incapable of performing its obligations under the Distribution Agreement," and that Cuccolini or the Peters Defendants *may* have communicated some of these non-specific statements to Plaintiff's customers. *See* Compl. ¶¶ 59-60, 105. These allegations lack the specificity required to set forth a defamation claim. *See Cruz v. Marchetto*, 2012 U.S. Dist. LEXIS 142662, at *9 (S.D.N.Y. Sept. 28, 2012) (failure to specifically plead "when, where, or in what manner the statements were made," necessitates dismissal of defamation claim). Count Six alleging defamation is dismissed.

## CONCLUSION

The Peters Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction (ECF 11) is GRANTED. Cuccolini's motion to dismiss for *forum non conveniens* is DENIED. Cuccolini's motion to dismiss Counts Three, Five and Six for failure to state a claim pursuant Fed. R. Civ. P. 12(b)(6) (ECF 18) is GRANTED.

The Clerk of the Court is directed to close the motions at ECF Nos. 11 and 18.

Dated: March 21, 2014
      New York, New York

SO ORDERED

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge